Rhys W. ROBINSON, et al., Appellants,

v.

## GEORGETOWN COURT CONDOMINIUM, LLC, Appellee.

### No. 11–CV–95.

District of Columbia Court of Appeals.

Argued Dec. 15, 2011.
Decided March 22, 2012.

Michael S. Steadman, Jr., with whom Michael N. Russo, Jr., and Jeffrey A. Barmach, Annapolis, MD, were on the brief, for appellants.

John D.V. Ferman, with whom Allen V. Farber was on the brief, for appellee.

Before FISHER and THOMPSON, Associate Judges, and STEADMAN, Senior Judge.

THOMPSON, Associate Judge:

D.C.Code § 15–102(a) (2001) provides, in its portion relevant to this appeal, that "[e]ach final judgment or decree for the payment of money" rendered by the Superior Court, "from the date such judgment or decree is filed and recorded in the office of the Recorder of Deeds of the District of Columbia ... shall constitute a lien on all the freehold and leasehold estates ... of the defendants bound by such judgment [or] decree...." [1] This appeal requires us

---

1. *See also Consumers United Ins. Co. v. Smith,* 644 A.2d 1328, 1352 (D.C.1994) ("The act of filing the judgment with the Recorder of Deeds" creates a valid lien on real property.); D.C.Code § 15–101 (2001) (providing, in relevant part, that "every final judgment or final decree for the payment of money ... when filed and recorded in the office of the Recorder of Deeds of the District of Columbia, is enforceable, by execution issued thereon").

to decide whether the filing and recordation in the Office of the Recorder of Deeds of a certified copy of the docket sheet in a Landlord and Tenant Branch ("Landlord Tenant court") case sufficed to create a lien on the real property of an individual against whom the Landlord and Tenant court had entered a money judgment, as shown by one (at least) of the entries on the docket sheet. We hold that filing and recordation of the certified docket sheet did create a lien, in favor of appellee Georgetown Court Condominium, LLC ("Georgetown Court"). Accordingly, we affirm the order of the trial court granting Georgetown Court's motion for summary judgment and denying appellants' cross-motion.

## I.

The relevant facts are not in dispute. In July 2006, Georgetown Court filed a complaint for non-payment of rent against its commercial tenant Scott Wandling. On October 20, 2006, the Landlord Tenant court entered a consent judgment, including a judgment for possession and a money judgment, against Wandling. Thereafter, Georgetown Court requested a certified copy of the money judgment from the Superior Court. What the Superior Court's Clerk's Office provided in response was (1) a three-and-a-fraction-page docket sheet, bearing the heading "2006 LTB 024778 Georgetown Court *Condominium vs. Scott Wandling,* T/A Georgetown Billards L & TC" and containing forty separately-dated docket items, and (2) an accompanying "Authentication," signed by a Deputy Clerk of the court, "certif[ying] that the document(s) annexed to this certificate is a true copy of the original on file and of record in [the Superior] Court."[2]

On July 9, 2007, Georgetown Court filed the certified docket sheet with the Recorder of Deeds and requested that it be "record[ed] ... as a lien against any real property deeded to Mr. Wandling in the District of Columbia." The same day, the certified docket sheet was recorded at Instrument No. 2007089936.

As of the date of recordation of the certified docket sheet, Wandling owned certain real property located on 38th Street, N.W. ("the 38th Street property"). On or about September 28, 2007, Wandling sold the 38th Street property to appellant Rhys W. Robinson. The deed and deeds of trust associated with this conveyance were recorded with the Recorder of Deeds on October 15, 2007.

On December 10, 2008, with Wandling having failed to pay the Landlord Tenant court money-judgment amount owed to Georgetown Court, Georgetown Court filed a "Complaint for Judicial Foreclosure," by which it sought a decree "ordering the sale of the Property and the distribution of the proceeds of the sale ... to satisfy its judgment lien." The Superior Court granted summary judgment in favor of Georgetown Court. The court denied the cross-motion brought by Robinson and his mortgage lender (appellant First Tennessee Bank, N.A., successor to PNC Mortgage), rejecting their arguments that (1) Georgetown Court's filing and recordation of the docket sheet and docket entries with the Recorder of Deeds did not amount to the filing and recordation of a "judgment" within the meaning of D.C.Code § 15–102(a), and therefore (2) no enforceable judgment lien had been created against the 38th Street property prior to the conveyance to Robinson.

2. According to the affidavit of one of Georgetown Court's lawyers, the case file in the Landlord Tenant court contained no other document or form evidencing the judgment against Wandling. We have reviewed the case file and found the same.

This appeal followed. Our review of the trial court's grant of a summary judgment is *de novo*. *Payne v. Clark*, 25 A.3d 918, 924 (D.C.2011).

## II.

Section 15–102(a) has provided since 1966 that the filing and recordation of a judgment with the Recorder of Deeds is necessary to create a lien on real property. *See* Pub.L. No. 89–745, 80 Stat. 1177 (Nov. 2, 1966). However, neither § 15–102 nor any other section of the D.C.Code chapter in which it is found (D.C.Code Title 15, Chapter 1, "Judgments and Decrees") contains a definition of the term "judgment" or specifies what form a judgment must take to create a lien when filed with the Recorder of Deeds. The focus of the 1966 legislation was on recordation of judgments in one central place (the Office of the Recorder of Deeds), in order to relieve interested persons from having to go through the index of every judgment docketed in the then-Court of General Sessions or in the United States District Court for the District of Columbia, to ascertain whether a judgment had been entered that might affect a property.[3] The focus of the 1966 legislation was not on what constitutes a recordable judgment or on the form such a judgment must take. The legislative history of earlier versions of the statutory provision now codified as D.C.Code § 15–102 (which provided that a judgment of the Court of General Sessions did not become a lien on interests in real property until docketed in the United States District Court for the District of Columbia) likewise appears to contain no discussion of the form of a recordable judgment.[4]

Appellants contend that we must look to Superior Court Civil Rules 54 and 58[5] as establishing the requirements for what constitutes a "judgment" within the meaning of § 15–102(a).[6] Super. Ct. Civ. R.

**3.** *See* H.R.Rep. No. 2264, 89th Cong., 2d Sess. 2 (1966); S.Rep. No. 1867, 89th Cong., 2d Sess. 2 (1966).

**4.** *See, e.g.,* S.Rep. No. 743, 88th Cong., 1st Sess. 1 (1963) (no discussion); H.R.Rep. No. 377, 88th Cong., 1st Sess. 1 (1963) (no discussion).

On the other hand, it is relevant to consider the form of the statute that existed prior to the 1966 amendment. As already indicated, it provided, *inter alia*, that every "judgment or decree rendered in the civil division of the District of Columbia Court of General Sessions, when *docketed* in the clerk's office of the United States District Court for the District of Columbia" shall be a lien (italics added). It gave similar effect to a forfeited recognizance in the criminal division of the Court of General Sessions that was "transmitted to the clerk's office of the District Court and *docketed* therein in the same manner as judgments rendered in the civil division of that court" (italics added). We see no apparent reason why the legislature, previously satisfied that docketing a judgment of the Court of General Sessions was sufficient to create a lien, would have intended to impose a more taxing requirement when, in 1966, it provided that all judgments must now be recorded in the Recorder's Office. Although, as appellants point out, we are dealing here with the requirements for the creation of a lien, the concepts of constructive and inquiry notice are fundamental to the operation of the recording system and may not be entirely irrelevant to the issue of legislative intent. *See, e.g., Clay Props., Inc. v. Washington Post Co.*, 604 A.2d 890 (D.C.1992) (en banc).

**5.** As noted above, Georgetown Court's judgment against Wandling was entered by the Landlord Tenant court. Super. Ct. L & T R. 2 states expressly that a number of the Superior Court's general Rules of Civil Procedure, including Super. Ct. Civ. R. 54 and Super. Ct. Civ. R. 58, "are applicable to proceedings in the Landlord and Tenant Branch of the Court," "except where inconsistent with the provisions of the Landlord and Tenant Rules or the summary nature of proceedings in this Branch."

**6.** Specifically, appellants argue that a "judgment or decree for the payment of money rendered in ... the Superior Court of the

54(a) ("Rule 54(a)"), entitled "Definition; form," provides that " '[j]udgment' as used in these Rules includes a decree and any order from which an appeal lies," but "shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings." Super. Ct. Civ. R. 58 ("Rule 58") provides in relevant part that "[e]very judgment shall be set forth on a separate document." [7] Appellants assert that, contrary to Rule 54(a), the docket sheet that Georgetown Court filed with the Recorder of Deeds contained recitals and records of prior proceedings and, contrary to Rule 58, did not constitute or contain a judgment "set forth on a separate document." Therefore, appellants contend, Georgetown Court's filing was not sufficient or effective to create a lien against the 38th Street property.

We can quickly dispose of appellants' argument that the separate-document requirement of Rule 58 dictates what may be deemed a "judgment" for purposes of section 15–102(a). Like most of the other Superior Court Civil Procedure Rules, Rule 58 was "derived directly from the correspondingly numbered Federal Rules

[of Civil Procedure]," [8] and its separate-document sentence is almost identical to the separate-document clause of Fed. R.Civ.P. 58(a). In this circumstance, we look to federal court decisions interpreting the counterpart federal rule "as persuasive authority in interpreting" the Superior Court rule. [9] Here, we look to the Supreme Court's explanation in *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam), that the "*sole purpose* of the separate-document requirement [of Fed.R.Civ.P. 58] . . . was to clarify when the time for appeal . . . begins to run." *Id.* at 384, 98 S.Ct. 1117 (italics added). [10] That "sole purpose" of the Rule 58 separate-document requirement dictates against relying on that requirement as a litmus test of what, when filed and recorded with the Recorder of Deeds, creates a lien on real property.

Appellants' argument that we should turn to Rule 54 for guidance is more persuasive. Rule 54 was not drafted or adopted to implement section 15–102(a) as enacted in 1963, [11] and it also was not adopted to implement the 1966 amendments to the statute, [12] but it is reasonable

District of Columbia" within the meaning of D.C.Code § 15–102(a) "can *only* mean a document determined *to be* a judgment in accordance with the Superior Court's own rules."

7. Appellants also rely on Super. Ct. Civ. R. 79, which provides *inter alia* that the Clerk of the Court "shall keep a 'civil docket' " (which "may be kept solely by computer or electronic means"), that "[a]ll . . . judgments shall be entered chronologically on the civil docket . . .," and that "[t]he Clerk shall keep, a correct copy of every final judgment. . . ." Super. Ct. Civ. R. 79(a), (b).

8. Introductory Note to the Superior Court Rules of Civil Procedure (Feb. 1, 1971).

9. *Dyhouse v. Baylor*, 455 A.2d 900, 901 n. 3 (D.C.1983) (citations and internal quotation marks omitted).

10. *See also Farrow v. J. Crew Grp. Inc.*, 12 A.3d 28, 36 (D.C.2011) ("The purpose of the separate document rule is to clarify when the time for noting an appeal commences to run and to avoid the inequities that might occur when a party appeals from a document or docket entry that appears to be final, but is not.").

11. *See* Pub.L. No. 88–241, § 15–102, 77 Stat. 523 (1963).

12. To the contrary, Fed.R.Civ.P. 54, the counterpart to Super. Ct. Civ. R. 54, was "taken from Rule 71 of [the] Rules of Practice in Equity," *Soderstrom v. Kungsholm Baking Co.*, 184 F.2d 756, 758 (7th Cir.1950), which long predates 1966. *See* Equity Rule 71, Rules of Practice for the Courts of Equity of the United States, *reprinted in* 226 U.S. 669–70 app. at 21–22 (1912) ("In drawing up decrees and

to surmise that the drafters of section 15–102(a) were familiar with how Rule 54(a) defines and circumscribes a "judgment."[13] In any event, for purposes of resolving this appeal, we can assume without deciding that Rule 54 sets out a useful definition of "judgment" as the term is used in section 15–102(a). We can do so because the asserted failure of Georgetown Court's filing to conform to that definition is the remaining basis of appellants' challenge to the effectiveness of the filing to create a lien, and because, as we explain below, we are satisfied that the filing contained a docket entry that sufficiently conformed to Rule 54(a) to create a lien in favor of Georgetown Court.[14]

As already described, the certified docket sheet that Georgetown Court filed with the Recorder of Deeds bore a heading indicating the names of the parties to the Landlord and Tenant Branch action: "Georgetown Court *Condominium vs. Scott Wandling.*" The following docket

entry of October 20, 2006, appears on the second page of the docket sheet:

10/20/06 Plaintiff Granted Money Judgment in the amount of $78,946.85 @ 5% per annum. Entered on Docket 10/20/06. J/Kravitz PG

This docket entry plainly is a "decree for the payment of money." D.C.Code § 15–102(a).[15] It is a separately dated item, demarcating it as distinct from the other thirty-nine entries on the docket sheet. It decrees, in brief and simple terms, that "Plaintiff [is] Granted [a] Money Judgment in the amount of $78,946.85 @ 5% per annum." It contains no recital of pleadings and no history or record of prior proceedings, and therefore comports with the Rule 54(a) proscription that a judgment "shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings." It also contains no fact-finding or legal reasoning, or other extrinsic matter. It states plainly in whose favor the judgment was entered

orders, neither the bill, nor answer, nor other pleadings, nor any part thereof, nor the report of any master, nor any other prior proceedings, shall be recited or stated in the decree or order.").

13. *Cf. Kansas City v. Fed. Pac. Elec. Co.,* 310 F.2d 271, 275 (8th Cir.1962) ("[I]t is to be assumed that Congress was aware of established rules of law applicable to the subject matter of the statute and thus, upon enactment, the statute is to be read in conjunction with the entire existing body of law."); *see also* S.Rep. No. 743, 88th Cong., 1st Sess. 5 (1963) (explaining that "considerable study had to be given to the problem of reconciling statutory procedural provisions with the Federal Rules of Civil Procedure and other court rules adopted under authority of law"); H.R. Rep. No. 377, 88th Cong., 1st Sess. 4 (1963) (same).

14. Our recognition that, for purposes of D.C.Code § 15–102(a), a docket entry can be a "judgment" is consistent with the Supreme Court's usage of the term in *Bankers Trust.* See *id.,* 435 U.S. at 385, 98 S.Ct. 1117 (refer-

ring to a "docket entry that appeared to be a final judgment" and to "an earlier ... entry [that had actually] been the judgment"). It is also consistent with usage of the term in other contexts. *See, e.g., United States v. Wissahickon Tool Works, Inc.,* 200 F.2d 936 (2d Cir. 1952) ("[N]otation of the grant [of summary judgment] in the civil docket on that date *became the judgment* [.]") (italics added); D.C.Code § 15–104 (1961) ("Any judge or officer of any court, that shall sign any judgments, shall at the signing of the same ... set down the day of the month and year of his so doing, upon the paper, book, *docket,* or record which he shall sign") (italics added); *Kessinger v. Kessinger,* 935 S.W.2d 347, 349 (Mo.Ct. App.1996) (discussing Missouri rule of civil procedure specifying that the "judgment may be a separate document or included on the docket sheet of the case."); *see generally* 46 Am.Jur.2d *Judgments* § 64 (2012) ("The law does not require that a final judgment be in any particular form."); see also note 4 *supra.*

15. *See also* D.C.Code § 16–541 (2001) (" '[J]udgment' includes an unconditional decree for the payment of money[.]'").

(Plaintiff's), and, since it appears on a docket sheet bearing the caption of the case, anyone reading it can see against whom the judgment was entered (Wandling). It recites the date when it was entered, allowing computation of the "5% per annum" interest amount. We discern no reason why the docket entry should not be deemed to be a judgment in conformity with Rule 54(a).[16] We note, moreover, that while Rule 54(a) states that "[a] judgment shall not *contain* a recital of pleadings, ... or the record of prior proceedings" (emphasis added), it does not state that a judgment may not be *accompanied* on a docket sheet by separate entries that contain such material.

Accordingly, we conclude that the filing and recordation of the certified docket sheet containing the entry, "Plaintiff Granted Money Judgment in the amount of $78,946.85 @ 5% annum. Entered on Docket 10/20/06, J/Kravitz PG," constituted the filing and recordation of a judgment within the meaning of D.C.Code § 15–102(a). Since the docket sheet was filed and recorded in the Office of the Recorder of Deeds on July 9, 2007, a lien against the 38th Street property, in favor of the judgment holder Georgetown Court, was created as of that date. And since that lien arose prior to the date when appellants acquired and recorded their interest in the property, the trial court did not err in granting summary judgment in favor of Georgetown Court on its complaint for judicial foreclosure.[17]

Wherefore, the judgment of the trial court is

*Affirmed.*

16. Appellants argue that since the judgment against Wandling was a consent judgment, the judgment should have been memorialized on Landlord and Tenant Branch Form 4 or 4(a) ("Consent Judgment Praecipe"), described in L & T R. 11–I as forms upon which the Landlord Tenant court's Interview and Judgment Officer may enter judgment by consent. However, nothing in the Superior Court Rules requires the Landlord Tenant court judge to use these forms in connection with entry of a consent judgment.

Appellants also complain that a conclusion that recordation of a docket sheet is effective to create a lien leaves "a third party stranger or innocent purchaser of real property in the District" to "divine" which entry is the right one and permits a judgment creditor to establish a judgment lien "by filing *anything* sufficiently relating to or referencing a judgment[.]" We disagree. For the reasons summarized in the text above, we think the money judgment in this case would have been easy for anyone reviewing the docket sheet to identify (including appellants, had they searched the land records, which apparently they did not); not just "anything" would likewise have passed muster. Moreover, we are loath to require from the busy Landlord and Tenant Branch any additional paperwork to evidence a recordable judgment, when neither the statute nor the Superior Court rules require more. See note 5 *supra,* quoting Super. Ct. L & T R. 2 proviso, "except where inconsistent with ... the summary nature of proceedings in this Branch." Finally, although we think Georgetown Court would have done better to circle or otherwise highlight the docket entry setting out the money judgment, we note that appellants do not claim that they failed to recognize the import of the recorded docket sheet whenever they first saw it.

17. *See Fidelity Nat'l Title Ins. Co. v. Tillerson,* 2 A.3d 198, 201 (D.C.2010) (explaining that if the recording of a lien complied with the recording statute and the recording was "first in time," it created an interest in the property that was superior to later-recorded interests).