*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

### Nos. 11-CT-1550 to 11-CT-1566

RICHARD Z. DUFFEE, ET AL., APPELLANTS,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CDC-6535-11, etc.)

(Hon. Russell F. Canan, Trial Judge)

(Argued October 22, 2013                    Decided July 3, 2014)

*Mark L. Gladstone* was on the brief for appellants.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Rosalyn C. Groce*, Deputy Solicitor General, and *John J. Woykovsky*, Assistant Attorney General, were on the brief for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and NEWMAN, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellants were arrested during a protest near the White House and convicted of failing to obey a lawful order ("FTO"), in violation of 18 DCMR § 2000.2 (2011), and blocking passage, in violation of D.C. Code § 22-1307 (2012 Repl.). The primary issue on appeal is whether the trial

court erred by holding that the offense of blocking passage does not require proof that the defendant breached the peace. We agree with the trial court and therefore affirm appellants' convictions for that offense.

## I.

We view the evidence in the light most favorable to the verdict. *See, e.g.*, *United States v. Bamiduro*, 718 A.2d 547, 548 (D.C. 1998). So viewed, the evidence established the following. In March 2011, Mr. Duffee, his sixteen co-appellants, and approximately 150 others marched from Lafayette Park to the White House sidewalk as part of an organized anti-war demonstration. The National Park Service, which polices the White House area in conjunction with the Secret Service, concluded that the demonstrators' conduct was unlawful for two reasons: the group did not have a permit to demonstrate on the White House sidewalk, and members of the group were demonstrating "in a stationary manner" while carrying signs. The demonstrators locked arms and chanted, and some members of the group sat down. Because of the size and density of the group, this conduct impeded the flow of foot traffic in the area and prevented people unassociated with the demonstration from having free access to the White House sidewalk.

The National Park Service set up a perimeter, informed the group that the area was closed, and advised the demonstrators to leave. Using a loudspeaker, an officer read a scripted warning that informed the demonstrators that (1) the group was in violation of regulations governing the area; (2) the sidewalk was closed; and (3) all persons who remained in the closed portion of the sidewalk would be arrested. The officer read the warning three times. The Park Service subsequently arrested 113 people who remained inside the perimeter, including appellants.

The District charged appellants with FTO and blocking passage. After a three-day bench trial, the Superior Court found each appellant guilty of both charges.

On appeal, appellants raise two claims. First, they argue that their convictions for FTO and blocking passage based on a single course of conduct merge into a single offense under the Double Jeopardy Clause. The District concedes that point. We therefore reverse appellants' convictions for FTO. *See, e.g.*, *Dickerson v. United States*, 620 A.2d 270, 274 n.6 (D.C. 1993) (accepting

government's concession that one of two merging offenses should be reversed).[1]

Second, appellants argue that breach of peace is an element of blocking passage. We conclude to the contrary.

## II.

This court "reviews de novo the elements of a crime which the prosecution must prove" to support a conviction. *Sutton v. United States*, 988 A.2d 478, 482 (D.C. 2010). We affirm the trial court's holding that blocking passage does not require proof of breach of the peace.

In pertinent part, the statute prohibiting the blocking of passages states:

> It is unlawful, alone or in concert with others, to crowd, obstruct, or incommode the use of any street, avenue, alley, road, highway, or sidewalk, or the entrance of any public or private building or enclosure or the use of or passage through any public conveyance, and to continue or resume the crowding, obstructing, or incommoding

---

[1] Because the trial court imposed concurrent sentences on each appellant for FTO and blocking passage, there is no need for resentencing. *Collins v. United States*, 73 A.3d 974, 985 (D.C. 2013). The reversal of the FTO convictions requires set-aside of the $50 assessment imposed upon each appellant. *Cf. United States v. Lloyd*, 983 F. Supp. 738, 744 (N.D. Ill. 1997) (reversal of conviction on Double Jeopardy grounds requires set-aside of special assessment). We therefore remand for entry of new judgments of conviction based solely on blocking passage.

after being instructed by a law enforcement officer to cease the crowding, obstructing, or incommoding.

D.C. Code § 22-1307. As appellants acknowledge, this provision does not by its terms require a breach of the peace.

The legislative history of the provision demonstrates that the District of Columbia Council intended that no such requirement be read into the provision. The provision was enacted in its current form in 2011. D.C. Act 18-693, § 302 (a), 58 D.C. Reg. 640, 644 (2011) (emergency legislation); D.C. Act 19-45, § 302 (a), 58 D.C. Reg. 3701, 3705 (2011) (second emergency legislation); D.C. Act 18-699, § 2 (a), 58 D.C. Reg. 731 (2011) (permanent legislation). The previous version of § 22-1307 provided,

> It shall not be lawful for any person or persons within the District of Columbia to congregate and assemble in any street . . . or any park or reservation . . . and engage in loud and boisterous talking or other disorderly conduct, or to insult or make rude or obscene gestures or comments or observations on persons passing by, or in their hearing, or to crowd, obstruct, or incommode the free use of such street . . . .

D.C. Code § 23-1307 (2001). Although that version also did not by its terms require proof of a breach of the peace, such a requirement had been read into the statute as applied in certain circumstances but not others. *Compare Adams v. United States*, 256 A.2d 563, 564-565 (D.C. 1969) (imposing breach-of-peace

element in case involving assembly on public street, to prevent punishment of "sightseers, tourists, or school children" who innocently obstruct use of street), *and Williams v. District of Columbia*, 136 U.S. App. D.C. 56, 419 F.2d 638 (1969) (en banc) (imposing breach-of-peace element in case involving use of profane language, to avoid potential First Amendment free-speech concerns) (interpreting D.C. Code § 22-1107 (1967), codified as amended at D.C. Code § 22-1307 (2012 Repl.)), *with Tetaz v. District of Columbia*, 976 A.2d 907, 910-12 (D.C. 2009) (refusing to impose breach-of-peace element in case involving intentional blocking of entry into congressional office building).

Before the revised provision was enacted, a working group studied how best to revise the earlier version of § 22-1307, as well as other related provisions. *See* D.C. Council, Committee on Public Safety & the Judiciary, Report on Bill 18-425, the Disorderly Conduct Amendment Act of 2010, at 2-3 (Nov. 18, 2010). That working group, the Disorderly Conduct Arrest Project Subcommittee of the Council for Court Excellence, recommended that § 22-1307 be revised to require that the defendant disregard a police order to cease the blocking of passage. Committee Report add. to attachment 2, at 7 (Disorderly Conduct Arrest Project Subcomm. of the Council for Court Excellence, Revising the District of Columbia Disorderly Conduct Statutes: A Report and Proposed Legislation (Oct. 14, 2010)).

The Subcommittee Report stated that the proposed revision contained "no requirement that such conduct must be intended or likely to provoke a breach of the peace . . . ." *Id.*

The Committee on Public Safety and the Judiciary indicated that it had "relie[d] heavily on the . . . Subcommittee's report and draft legislative language." Committee Report at 3. Although the D.C. Council changed the wording of § 22-1307 in some respects from the version proposed by the Subcommittee, the Committee Report explained the reasons for those changes. Committee Report at 6-7. The Committee Report did not suggest that any of the changes were relevant to the question whether a breach-of-the-peace element should be read into the revised statute. *Id.*

In sum, the legislative history of the revised version of § 22-1307 confirms what the plain language of the provision suggests: the D.C. Council did not intend to impose a breach-of-the-peace element. *See, e.g.*, *Carter v. United States*, 591 A.2d 233, 234 (D.C. 1996) (adopting statutory interpretation consistent with plain language and confirmed by legislative history).

Appellants make three arguments in support of the view that a breach-of-the-peace element should be read into the revised version of § 22-1307. We do not find those arguments persuasive.

First, appellants argue that the revised version of § 22-1307 should be interpreted to carry forward the breach-of-the-peace element that had been read into the previous version of the provision. As we have previously noted, however, prior case law did not treat breach of the peace as an invariable requirement under the previous version of § 22-1307. Rather, such a requirement was read into the provision in certain circumstances but not others. See *supra* pages 5-6. In any event, we see no basis to interpolate a breach-of-the-peace element into the current version of § 22-1307, given the absence of support for that requirement in the statutory text and the clear indications that the legislature did not intend to impose such a requirement. *Cf., e.g.*, *1618 Twenty-First Tenants' Ass'n, Inc. v. Phillips Collection*, 829 A.2d 201, 206-07 (D.C. 2003) (declining to adopt interpretation of statute that legislative history indicated D.C. Council had considered and "expressly rejected").

Second, appellants suggest that "serious constitutional problems" would be presented unless a breach-of-the-peace requirement were read into the revised

version of § 22-1307. Appellants cite no authority, however, indicating that a serious constitutional problem is presented by a statute that forbids people to continue to block passage on public streets after the police have ordered them to cease doing so. Moreover, the principle that statutes should be construed to avoid serious constitutional problems does not authorize courts to interpolate into a provision a requirement that is not supported by statutory text and that was consciously rejected by the legislature that enacted the provision. *See Thompson v. United States*, 59 A.3d 961, 966 n.12 (D.C. 2013) (declining to apply doctrine of constitutional avoidance "[g]iven the clarity of the Council's purpose").[2]

Finally, appellants suggest that the Subcommittee Report inaccurately described the law in this jurisdiction when it said, "The courts have ruled that a real or threatened breach of the peace is not necessary in order to criminalize this type of disorderly conduct." The sentence in the Subcommittee Report is ambiguous at worst. Read narrowly, it is accurate, because our decision in *Tetaz*

---

[2] On appeal, appellants do not challenge the constitutionality of § 22-1307, either facially or as applied. Accordingly, we do not address the issue. *See, e.g.*, *In re Rips*, 947 A.2d 1161, 1163 (D.C. 2008) (declining to consider constitutional issue that appellant did not raise and parties had not briefed). To the extent that appellants attempted to raise the issue at oral argument, we generally do not consider points raised for the first time on appeal at oral argument. *Bliss v. Bliss*, 733 A.2d 954, 960 n.13 (D.C. 1999); *Ramos v. United States*, 569 A.2d 158, 162 n.5 (D.C. 1990).

established that proof of breach of the peace was not invariably required to establish that a defendant unlawfully blocked passage under the previous version of § 22-1307. The sentence would be inaccurate only if it were read broadly to suggest that proof of breach of the peace was never required under the prior version of § 22-1307. Any imprecision in the sentence provides no basis for disregarding the plain language of the provision and the clear purpose of the legislature. First, we assume that the legislature has a correct understanding of the law. *Robinson v. Georgetown Ct. Condo, LLC*, 39 A.3d 1286, 1289-90 & n.14 (D.C. 2012). Moreover, even if it were clear that the legislature was working from a mistaken understanding of the law, we normally would nevertheless be required to give effect to the statutory text and the clear legislative intent. *Cf. Brown v. General Servs. Admin.*, 425 U.S. 820, 828 (1961) ("Whether that understanding of Congress was in some ultimate sense incorrect is not what is important in determining the legislative intent . . . . [T]he relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was.").

We conclude that the trial court correctly declined to read a breach-of-the-peace element into the current version of § 22-1307. We therefore affirm appellants' convictions for blocking passage. We reverse appellants' convictions

for FTO and remand for entry of judgments based solely on appellants' convictions for blocking passage.

*So ordered.*