*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 19-CT-625 and 19-CT-648

RICHARD OCHS and JESSE P. SCHULTZ III, APPELLANTS,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CDC-5243-19 and CDC-5402-19)

(Hon. Carol A. Dalton, Trial Judge)

(Argued April 27, 2021                              Decided September 2, 2021)

*Mark L. Goldstone* for appellants.

*Andrew J. Delaplane*, Assistant Attorney General for the District of Columbia at the time of argument, for appellee. *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Sonya L. Lebsack*, Assistant Attorney General, were on the brief for appellee.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*:  Appellants Richard Ochs and Jesse P. Schultz III

appeal from their convictions for crowding, obstructing, or incommoding a street

after being warned to cease, in violation of D.C. Code § 22-1307(a) (2012 Repl.). We affirm.

## I.

The evidence at trial was as follows. At about 8 a.m. on a work day, Capitol Police Officer Patrick Redding was directed to respond to 300 First Street, SE. When he arrived, he saw about twenty pedestrians dressed in costumes and chanting in the street as part of a protest. Officers had placed vehicles at the nearest cross streets, blocking vehicles and preventing traffic from entering the block, for the safety of the protestors. After creating a perimeter around the protestors, the officers decided to order the protestors out of the street, in order to get commuter traffic moving again. Officers warned the protestors three times to leave the middle of the street or they would be arrested. The warnings were given a few minutes apart. Most of the protestors left the street, but Mr. Ochs, Mr. Schultz, and others remained in the street, sitting with locked arms. Officers arrested the remaining protestors, including Mr. Ochs and Mr. Schultz. The arrests occurred about ten minutes after Officer Redding arrived on the scene. The block at issue ordinarily has traffic travelling in both directions and is usually busy on workdays.

A witness who attended the demonstration testified for Mr. Ochs and Mr. Schultz. According to the witness, the protest concerned climate change and was directed at the Republican National Committee, which is located nearby.

## II.

Mr. Ochs and Mr. Schultz argue that their convictions should be overturned because the Capitol Police failed to comply with the requirements of the First Amendment Assemblies Act, D.C. Code § 5-331.01 et seq. (2019 Repl.) (FAAA). We hold that the specific provisions of the FAAA upon which Mr. Ochs and Mr. Schultz rely do not apply to the Capitol Police.

The FAAA was enacted by the District of Columbia Council. D.C. Law 15-352, 52 D.C. Reg. 5417 (June 10, 2005). The FAAA declares the policy of the District to be that

> persons and groups have a right to organize and participate in peaceful First Amendment assemblies on the streets, sidewalks, and other public ways . . . of the District of Columbia, and to engage in First Amendment assembly near the object of their protest . . . , subject to reasonable restrictions designed to protect public safety, persons, and property, and to accommodate the interest of persons not participating in the assemblies to use the streets,

sidewalks, and other public ways to travel to their intended destinations.

D.C. Code § 5-331.03. The FAAA generally directs the Metropolitan Police Department (MPD) to recognize and implement that policy. D.C. Code §§ 5-331.02(2), -331.04(a), -331.07(a).

Mr. Ochs and Mr. Schultz rely on two specific provisions of the FAAA: § 5-331.07(b)(1) (requiring MPD to seek voluntary compliance when enforcing time, place, and manner restrictions) and § 5-331.07(d)(1) (limiting circumstances in which MPD can issue general orders to disperse). The District of Columbia argues broadly that none of the provisions of the FAAA apply to the Capitol Police and that the Council lacks authority to enact legislation regulating the Capitol Police. We need not reach those arguments, because it suffices for current purposes to hold more narrowly that the two specific provisions at issue do not apply to the Capitol Police.

As noted, the two provisions at issue by their terms are directed solely to MPD. D.C. Code § 5-331.07(b)(1), (d)(1). Mr. Ochs and Mr. Schultz have not identified any reason for interpreting those provisions to extend beyond their literal scope, and we are not aware of any basis for doing so. *See, e.g.*, *Sharps v. United States*, 246 A.3d 1141, 1149 (D.C. 2021) ("We will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd

result.") (internal quotation marks omitted).  We therefore hold that those provisions do not apply to the Capitol Police.

Mr. Ochs and Mr. Schultz also argue that Congress has made the FAAA applicable to the Capitol Police through 2 U.S.C. § 1967.  We disagree. Section 1967 gives the Capitol Police the authority "to make arrests and otherwise enforce the laws of the United States, including the laws of the District of Columbia," in various circumstances.  2 U.S.C. § 1967(a).  That provision is a grant of authority to the Capitol Police and does not by its terms subject the Capitol Police to provisions of the D.C. Code that regulate MPD as a matter of local law.  Here too Mr. Ochs and Mr. Schultz have not identified any basis for interpreting the provision beyond its literal terms, and we see no basis for doing so.  We therefore hold that § 1967 did not require the Capitol Police to comply with the requirements of the FAAA at issue in this case.

The District argues in the alternative that the Capitol Police did comply with the requirements of the FAAA at issue.  Because we have held those requirements inapplicable, we do not reach the District's alternative argument.

## III.

Mr. Ochs and Mr. Schultz argue that the evidence was insufficient to support their convictions. We conclude to the contrary.

We review de novo whether the evidence was sufficient,

> viewing the evidence in the light most favorable to sustaining the judgment, and making no distinction between direct and circumstantial evidence. Judicial review is deferential, giving full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. The evidence need not compel a finding of guilt beyond a reasonable doubt, and it need not negate every possible inference of innocence. Rather, proof of guilt is sufficient if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Fitzgerald v. United States*, 228 A.3d 429, 436-37 (D.C. 2020) (brackets, citations, ellipses, and internal quotation marks omitted).

Mr. Ochs and Mr. Schultz first challenge the sufficiency of the evidence that they crowded, obstructed, or incommoded the street, as required for a conviction under D.C. Code § 22-1307(a)(1)(A). Specifically, they point out that the street was already blocked by police vehicles when Officer Redding arrived and that there was no evidence as to when exactly the police blocked the street. Thus, they argue, there

was no evidence that Mr. Ochs and Mr. Schultz -- rather than preemptive actions of the police -- were responsible for the blockage of the street.

We need not decide who bore responsibility for the initial blockage of the street. In finding Mr. Ochs and Mr. Schultz guilty, the trial court found that Mr. Ochs and Mr. Schultz continued the blockage of the street by remaining in the street after the warnings to leave. We hold that the evidence supported the trial court's conclusion on that point. There was evidence that the protest was on a work day; the street usually was busy on work days; the police had blocked the street, preventing traffic from entering the block and keeping vehicles away from the protestors; the police warned the protestors to leave, in order to get commuter traffic moving again; and Mr. Ochs and Mr. Schultz refused to leave despite those warnings. That evidence was sufficient to support a finding that Mr. Ochs and Mr. Schultz prolonged the blockage of traffic and actually obstructed drivers from using the street.

Mr. Ochs and Mr. Schultz also argue that there was insufficient evidence that they were given warnings consistent with the requirements of the FAAA. That argument fails, however, in light of our holding that the provisions of the FAAA on which Mr. Ochs and Mr. Schultz rely were not applicable in this case.

## IV.

Mr. Ochs and Mr. Schultz ask this court to hold that convictions under § 22-1307 require proof of a breach of the peace. They acknowledge that this court held otherwise in *Duffee v. District of Columbia*, 93 A.3d 1273, 1274-77 (D.C. 2014) (explaining that § 22-1307's text did not require proof of breach of peace and that legislative history of 2011 enactment demonstrated that Council did not intend to impose such requirement). Pointing out that § 22-1307 was amended in 2013, however, they argue that the provision should now be interpreted to require proof of a breach of the peace. We are not persuaded by that argument.

The 2013 amendments made various changes to § 22-1307, including adding language applicable to the blocking of passage in a park and to certain demonstrations that did not block passage at all. D.C. Law 19-320, § 102, 60 D.C. Reg. 11101 (Aug. 2, 2013). None of the amendments either refer to breach of the peace or suggest any reason to interpret § 22-1307 to require proof of a breach of the peace. *Id.* Mr. Ochs and Mr. Schultz suggest that the committee report relating to the 2013 amendments does not explicitly state that § 22-1307 lacks a breach-of-the-peace requirement. Omnibus Criminal Code Amendments Act of 2012, Report on Bill 19-645 at 4-6 (Nov. 29, 2012). That omission is quite natural, however, given

that the 2011 enactment contained no breach-of-the-peace requirement and the 2013 amendments related to other issues. We see no basis to infer that the Council intended in the 2013 amendments to silently impose a requirement it had rejected only two years earlier. *See, e.g.*, *Newell-Brinkley v. Walton*, 84 A.3d 53, 58 (D.C. 2014) (noting "it is highly unlikely that the Council would have altered preexisting law in so fundamental a way implicitly rather than explicitly"); *cf., e.g.*, *United States v. O'Brien*, 560 U.S. 218, 231 (2010) ("[T]he applicable principle is that Congress does not enact substantive changes *sub silentio*.").

## V.

Finally, Mr. Ochs and Mr. Schultz make various arguments based on MPD and Capitol Police Department policies, as reflected, for example, in general orders issued by the two departments. Such policies and general orders, however, generally create no rights enforceable by the public. *See, e.g.*, *In re Walker*, 856 A.2d 579, 586 (D.C. 2004) (per curiam) ("[W]e have held, in a variety of factual settings, that internal policy manuals and similar documents generally do not give rise to judicially enforceable rights, for they are not statutes or regulations and have no legal force or effect.") (citing, inter alia, *Morgan v. District of Columbia*, 468 A.2d 1306, 1317-18

(D.C. 1983) (en banc) (police department general orders)). We therefore see no basis for relief based on claimed violations of General Orders or policies.

## VI.

For the foregoing reasons, we affirm the judgments of the Superior Court.

*So ordered.*