*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 13-CM-1463 and 13-CM-1464

DARIUS WINSTON, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CMD 16060-13 and CMD-16329-13)

(Hon. Marisa Demeo, Trial Judge)

(Submitted October 14, 2014                    Decided January 22, 2015)

*Rahkel Bouchet* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, *Elizabeth Trosman* and *Elizabeth H. Danello*, Assistant United States Attorneys, and *Rockne Chickinell*, Special Assistant United States Attorney, were on the brief for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

THOMPSON, *Associate Judge*: After a bench trial, appellant Darius Winston was convicted of two counts of unlawful entry,[1] charges premised on his presence on the grounds of the Kelly-Miller LeDroit ("Kelly-Miller") public housing

---

[1] *See* D.C. Code § 22-3302 (2012 Repl.).

complex in violation of an August 15, 2013, barring notice. Appellant challenges his convictions on the ground that there was "no evidence to support the validity of the August 15th barring order." We agree and therefore reverse the convictions.

**I**.

The government presented evidence at trial that on August 15, 2013, at approximately 11:00 p.m., while on patrol duty for several District of Columbia housing complexes, D.C. Housing Authority ("DCHA") Police Officer Ricky Chasten encountered appellant and another individual sitting on a stoop in the courtyard of the Kelly-Miller complex in the 200 block of W Street.[2] When Officer Chasten approached appellant and his companion, the two got up and walked off, but they stopped when the officer asked them to halt.

Officer Chasten testified that he verified that appellant was neither a resident of the property nor a member of a resident's household.[3] The officer explained

---

[2] The complex is bounded by 4th Street, N.W., on the west; 2nd Street, N.W., on the east; W Street, N.W., on the north; and V Street, N.W., on the south.

[3] Specifically, the officer obtained a database search, which showed that appellant used to reside at the Kelly-Miller complex, but was no longer a resident. Officer Chasten acknowledged that the address he listed as appellant's on the

(continued…)

that he did not verify whether appellant was a guest because residents are "responsible for their guest at all times" and appellant "was not with [a resident host] at the time of the stop." Officer Chasten issued appellant a barring notice for one year on the grounds that appellant was not an "authorized person" and "not a guest" and thus was subject to being barred under 14 D.C.M.R. § 9600.4 (2005). Chasten wrote out the barring notice in front of appellant, advised him verbally that he was barred from the property, verbally explained the boundaries of the bar to him, "tried to get them [presumably, appellant and his companion] to sign it" to acknowledge receipt, and asked appellant whether he wanted a copy of the written notice. Appellant "refused" to sign, refused a copy, and "ran off."

On both August 19, 2013, and September 11, 2013, Officer Chasten was again patrolling the housing complex when he again encountered appellant inside the complex's W Street courtyard (on August 19) and V Street courtyard (on September 11). Appellant was arrested on both occasions and charged with unlawful entry.

---

(…continued)
barring notice, obtained from appellant's identification, was an address located within the Kelly-Miller complex. However, as Officer Chasten testified the DCHA database showed, and as appellant's mother also testified during the defense case, appellant no longer resided at the complex on the day the barring notice was issued.

Officer Chasten was the sole witness for the government. After his testimony, defense counsel moved for a judgment of acquittal, arguing that the government had failed to establish that appellant was an unauthorized person and was not a guest on the day the barring notice was issued. After the court denied the motion, appellant's mother, Jennifer Winston, testified as the sole witness for the defense. Ms. Winston testified that she moved to the Kelly-Miller complex in 1992, had lived in various units there, moved to a unit at 420 W Street, N.W., in January 2013, and still resided there at the time of trial. She further testified that until January 2013, appellant lived with her in several different apartments within the complex. Ms. Winston stated that after that, appellant no longer lived with her, but "visit[ed] [her] on a regular basis[,] . . . roughly four times a week"; that he checked up on her because she is on dialysis; and that it was "pretty safe to say" that appellant still had a lot of friends in the area. Ms. Winston testified that she could not recall whether she was with appellant at any time on the dates he was arrested, but acknowledged that she was not with him at the time of the arrests. Neither the prosecutor nor defense counsel questioned Ms. Winston about whether she was with appellant on the date the barring notice was issued, or about whether appellant was her guest on that day. Ms. Winston testified that she "wanted to come [to the trial] to support [her] son."

At the close of the evidence, defense counsel emphasized Officer Chasten's testimony that he did not verify whether appellant was a guest on August 15 when the barring notice was issued and argued that the government had not otherwise proven that appellant was not a guest on that day. The trial court readily found that the government had proven the first two elements of unlawful entry by showing that appellant entered the Kelly-Miller property voluntarily, on purpose and not by mistake or accident, on August 19 and September 11. The court then addressed whether appellant entered without lawful authority and against the will of DCHA. The court reasoned that these inquiries "take[] us back to the original date of the barring[,] which was August 15, 2013[.]" The court credited Officer Chasten's testimony as to what transpired on August 15. It then noted that, under 14 D.C.M.R. § 9600.5 (b)(2), a resident's guest may be subject to barring as an unauthorized person if he is "on DCHA property at a location or unit not specified on the guest pass or visitor log, unless the person is on the most direct route to or from such location, or accompanied personally by the resident being visited." The court found "no evidence that [on August 15, appellant] was on the most direct route to or from any location where he was a guest" and no evidence that appellant was "accompanied personally by any resident that he was visiting at that time." The court also found "no reason and no evidence . . . to find the barring to be an

unlawful barring" and "no evidence to cause the [c]ourt to have a reasonable doubt that there was a basis for the barring[,]" i.e., that appellant was "an unauthorized person . . . at the time of the barring." Concluding that "it was a lawful barring" and that appellant knew or should have known that he was on the Kelly-Miller complex property on August 19 and September 11 against the will of DCHA and Officer Chasten and in violation of the barring notice, the court found appellant guilty of both counts of unlawful entry. This appeal followed.

Appellant argues on appeal that the order barring him from the Kelly-Miller complex "was not based on proper statutory authority [or] upon sufficient evidence" and that he therefore "cannot be held criminally accountable for violating that order." He emphasizes that Officer Chasten, the government's sole witness, "simply assumed, without checking, that he was not a guest" on the day the barring notice was issued, that the government made no effort to prove that he was not his mother's guest or someone else's guest on that day, and therefore that the evidence was not sufficient to convict him of violating a lawful barring order. The government contends that "[t]he validity of the barring order simply was not an element of the offense[,]" and that "the alleged invalidity of the barring notice

does not provide appellant with a defense to charges of unlawful entry." Our review of these issues is de novo.[4]

We think appellant has the better of the arguments. We hold that where the government seeks to prove unlawful entry premised on a violation of a DCHA barring order, it must prove that the barring order was issued for a reason described in DCHA regulations and must offer evidence that the DCHA official had an objectively reasonable basis for believing that the criteria identified in the relevant regulation were satisfied.[5]

---

[4] *See Russell v. United States*, 65 A.3d 1172, 1176 (D.C. 2013) (explaining that we review "claims of insufficiency of the evidence *de novo*, applying the same standard as the trial court in ruling on a motion for judgment of acquittal") (internal quotation marks omitted); *Duffee v. District of Columbia*, 93 A.3d 1273, 1274 (D.C. 2014) ("This court 'reviews de novo the elements of a crime which the prosecution must prove' to support a conviction."); *In re D.F.*, 70 A.3d 240, 243 n.5 (D.C. 2013) ("As this is an issue of regulatory interpretation, our review is *de novo*.").

[5] This court's recent opinion in *Cartledge v. United States*, 100 A.3d 147 (D.C. 2014), does not preclude this holding. *Cartledge* considered, on plain-error review, a claim — similar to the one appellant presents here — that a barring notice "was invalid because it rested solely on the police officers' mere suspicion of [Cartledge's] involvement in criminal activity [at a DCHA complex], as opposed to a higher standard of proof." *Id.* at 147. In rejecting that claim, we reasoned that the alleged error could not be plain because "no case in this jurisdiction has held that a Bar Notice is invalid if it is based merely on suspicion of criminal activity as opposed to stronger evidence[,]" and that in any event, the suspicion "of [Cartledge's] involvement in such activity . . . was both articulable

(continued…)

**II**.

"In order to establish the elements of unlawful entry under § 22-3302, the government must demonstrate '(1) entry that is (2) unauthorized — because it is without lawful authority *and* against the will of the owner or lawful occupant.'" *Cartledge*, 100 A.3d at 148-149 (italics added).[6]  Thus, to convict appellant, it was not enough for the government to prove, as it did, that DCHA, through Officer Chasten, did not want appellant in the Kelly-Miller courtyards; rather, the

_____

(…continued)

and reasonable[.]" *Id.* at 150.  We also observed, in comments not necessary to the decision, that "[a]t most, a claim that the lawful owner (or its representative) lacked a sufficient basis in law to issue [a] Barring Notice might be a potential defense to the charge[,]" *id*., and that while Cartledge had "style[d] this argument as one attacking the sufficiency of the evidence, what he articulate[d], in fact, [was] a potential *defense* to the charge of unlawful entry." *Id.* at 149 (emphasis in the original).  These statements, which countered what appeared to be a suggestion that the government had the burden of proving beyond a reasonable doubt that Cartledge was actually involved in criminal activity at the DCHA complex in order to enforce the barring notice, do not foreclose our holding in this case that the government's burden is to prove, as an element of the offense of unlawful entry onto DCHA property, that the issuing official had *an objectively reasonable basis for believing* that the criteria identified in the relevant regulation were satisfied, and that the government's failure to do so renders its evidence insufficient for conviction.

[6]  We note that the Information as to each count of unlawful entry charged that appellant "without lawful authority" entered the Kelly-Miller housing complex.

government had to prove that appellant was in the courtyards in derogation of the law that establishes who has (and who lacks) lawful authority to be on DCHA property. We agree with the trial court that determining whether the government met its burden of proof requires going "back to the original date of the barring[,] which was August 15, 2013" and the regulation that governs barring notices.

The relevant regulation is 14 D.C.M.R. § 9600 (entitled "Public Housing: Barring Policy"). It provides in § 9600.1 that "DCHA has the right to refuse entrance or access to any of its properties to any unauthorized person as defined in § 9600.2."[7] 14 D.C.M.R. § 9600.1. Section 9600.2 provides that "[n]o person may enter upon a DCHA property unless that person is authorized to be on the property[,]" and then specifies which persons are authorized persons. *Id.* at § 9600.2. Among the authorized persons are "[r]esidents of the property[,]" "[m]embers of the resident's household[,]" and, relevant here, "[a] resident's guests, *except as provided in § 9600.5*[.]" *Id.* (italics added). In turn, § 9600.5 provides in pertinent part that "[a]ny resident's guest who engages in any activity that threatens the health, safety or right to peaceful enjoyment of the premises by

---

[7] *See also* § 9600.4 ("Any person not identified in § 9600.2 as an authorized person may be subject to the issuance of a Bar Notice for the period of time specified in the Bar Notice[.]").

other residents or DCHA employees or violates DCHA policy is an unauthorized person and may be barred . . . as specified in sub-section[] (b)[.]" 14 D.C.M.R. § 9600.5.

Appellant emphasizes the absence of proof that he was not a "resident's guest" at the time the barring order was issued. If appellant was a resident's guest at that time, that status, in the absence of an infraction as described in § 9600.5, would have qualified him as an "authorized person" whom Officer Chasten had no basis for barring. Officer Chasten testified that appellant was not a guest because he was not with a resident when the officer encountered him, but that explanation was not consistent with the definition of "guest" set out in § 9600.5 (e): "any individual who is an invitee of, and can identify by name and unit number, an individual who is a member of a household under lease with DCHA, and such individual is available and willing to accept the guest and responsibility for the actions of the guest." 14 D.C.M.R. § 9600.5 (e). In light of the undisputed testimony by appellant's mother, which the trial court found credible, that she lived in the Kelly-Miller complex, that appellant visited her regularly and had friends there, and that she came to the trial because she "wanted to support [her] son," the

record does not support a finding that appellant was not a resident's guest at the time the barring order was issued.[8]

However, as the regulations indicate, even a resident's guest may be an unauthorized person if he engages in conduct described in § 9600.5. Pertinent here (since Officer Chasten relied on the fact that appellant was not accompanied by a complex resident on August 15),[9] subsection 9600.5 (b)(2) authorizes the barring of a person as an "unauthorized person," for the infraction of "[b]eing on DCHA property at a location or unit not specified on the guest pass or visitor log, unless the person is on the most direct route to or from such location, or accompanied

---

[8] This is so even though Officer Chasten encountered appellant at about 11:00 p.m. in the 240 block of W Street, while his mother lived in the 400 block of W Street. Nothing in the DCHA regulations indicates that a guest may not visit after a certain time or may not be at a location on the premises of a housing complex other than the location where the resident who is the guest's host lives. The regulations also do not say that, to qualify as a "resident's guest," a guest must have a "guest pass" (a term used in § 9600.5 (b)(2)).

[9] We note that Officer Chasten testified that he "smelled a strong odor of marijuana emanating from" appellant and his companion on August 15, but the court sustained defense counsel's objection to this "other crimes" testimony. The prosecutor explained that she had been "trying to establish . . . what led up to the officer issuing the barring notice[,]" but the court ruled that it did not see "[a]t this point" "that the basis for the barring is relevant to the case." The court added that the basis "may become relevant" if the defense opened the door during cross-examination, but the prosecutor made no further effort to elicit testimony on this point as support for the barring order.

personally by the resident being visited[.]" 14 D.C.M.R. § 9600.5 (b)(2). The evidence in this case showed that appellant was sitting on a stoop when Officer Chasten encountered him on August 15 and thus that he was not "on the most direct route" to any location. The evidence further supported an inference that appellant was not "accompanied personally by [a] resident being visited" (because, according to Officer Chasten's credited testimony, appellant's companion, too, was asked to sign a barring order but refused and walked away). Thus, the evidence established that appellant did not satisfy the provisos (the "unless" factors) that would have relieved him of any requirement that he be only in a location specified on a guest pass or visitor log.

But those provisos come into play only if an individual is "on DCHA property at a location or unit not specified on the guest pass." 14 D.C.M.R. § 9600.5 (b)(2). What was missing from the government's proof was evidence that appellant was "on DCHA property at a location or unit not specified on the guest pass" and, for that reason, was properly subject to being barred from the Kelly-Miller complex. Indeed, there was no evidence about whether appellant had or lacked a guest pass, and Officer Chasten acknowledged that he "didn't verify whether [appellant] was a guest[,]" which we take to mean, *inter alia*, that he did

not ask about or review a guest pass.[10]  In short, the evidence did not establish that the barring order was authorized under 14 D.C.M.R. § 9600.5 (b)(2).

The government also did not prove that there was another basis, recognized in the regulations, justifying issuance of the barring order.  Finally, except insofar as the evidence showed that appellant was on the Kelly-Miller complex premises on August 19 and September 11 in violation of the barring order, there was no evidence showing that appellant was an "unauthorized person," and thus was on the property "without lawful authority," on those dates.

We conclude therefore that appellant's convictions of unlawful entry for being on the Kelly-Miller housing complex grounds without lawful authority

---

[10]  Nor did Officer Chasten's testimony establish that he was the sole issuer of guest passes, such that he would have known whether appellant had a pass and what restrictions, if any, it imposed.  To the contrary, the evidence established that Chasten worked a "shift" (implying that there were other shifts during which a pass might have been issued) and that he also worked at several other DCHA properties (and thus was not always stationed at Kelly-Miller).  There was also no evidence that a guest pass would have restricted appellant to a location other than the stoop where Officer Chasten encountered him.

cannot be sustained.[11]   Because the evidence was insufficient to prove that appellant's entry was unlawful on either August 19 or September 11, appellant was entitled to a judgment of acquittal.[12]

---

[11]   The government argues that "[u]nless and until the [barring] order was invalidated, appellant was obliged to obey it." It cites as authority cases holding that a convicted felon must clear his status before acting in defiance of a felon-in-possession statute and that an individual must comply with a facially valid licensing ordinance until it is modified or unless an exception to it applies. However, those circumstances are not analogous to the situation presented here. The barring notice was just that — a DCHA notice, not a presumptively valid statute or regulation or court order — and it was a valid basis for an unlawful entry conviction only insofar as it was authorized by DCHA regulations.

[12]   Appellant also argues that the barring notice violated his right to intimate association with his mother and that his convictions violate due process because he has no right to judicial review of the barring notice (i.e., he can test its validity in court only by defying the order and facing prosecution, and he would still be convicted if the barring notice was erroneously but reasonably issued). These arguments are not frivolous, and similar arguments have been the subject of litigation in other jurisdictions and of commentary in treatises and law reviews. *See, e.g., Commonwealth v. Nelson*, 909 N.E.2d 42 (Mass. App. Ct. 2009) (holding that criminal trespass conviction could not stand against a defendant who court found had been passing through the halls of housing authority property in order to reach a tenant's apartment at the tenant's invitation); *Diggs v. Hous.*, 67 F. Supp. 2d 522, 532 (D. Md. 1999) (allowing suit under 42 U.S.C. § 1983 by public housing residents who claimed that the housing authority's barring and criminal trespass policy infringed their rights to have guests, in violation of federal law requiring public housing authorities to provide for reasonable accommodation of tenants' guests); N. Gregory Smith, "Restricting Individuals from Visiting Public Housing Projects," 5-45 Thompson on Real Property, Thomas Editions § 45.12 (2014); Elena Goldstein, *Kept Out: Responding to Public Housing No-Trespass Policies*, 38 Harv. C.R.-C.L. L. Rev. 215 (2003). However, in light of our disposition that the government failed to prove that there was an objectively reasonable basis for the barring notice, we need

(continued…)

Accordingly, appellant's convictions are reversed, and the matter is remanded for the trial court to enter judgments of acquittal on the two unlawful entry charges.

*So ordered.*

---

(…continued)

not reach these issues, issues we would likely decline to consider in any event since they were not raised in the trial court. *See In re Richardson*, 759 A.2d 649, 653 (D.C. 2000) ("This court ordinarily declines to consider constitutional contentions which are being presented for the first time on appeal unless the alleged constitutional shortcoming in the proceedings was so plain that the judge should have ruled on it notwithstanding the litigant's failure to raise it.") (internal quotation marks omitted).