*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CT-404

J.P., APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(TRC-3-18)

(Hon. John McCabe, Trial Judge)

(Argued May 3, 2018                    Decided July 26, 2018)

*Jaclyn S. Frankfurt*, with whom *Samia Fam* and *Mikel-Meredith Weidman* were on the brief, for appellant.

*Holly M. Johnson*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Stacy L. Anderson*, Acting Deputy Solicitor General, were on the brief, for appellee.

Before GLICKMAN, EASTERLY, and MCLEESE, *Associate Judges.*

MCLEESE, *Associate Judge*: Appellant J.P. is a sixteen-year-old minor who was prosecuted as an adult for alleged traffic offenses but has been declared incompetent to stand trial. J.P. challenges the trial court's order requiring J.P. to undergo inpatient mental-health treatment during the pendency of the District of

Columbia's petition to have J.P. civilly committed. J.P. argues that D.C. Code § 7-1231.14 (a) (2018 Repl.) precludes the trial court from ordering J.P. to undergo inpatient mental-health treatment absent consent from J.P.'s parent or guardian. This is an emergency appeal, and after briefing and oral argument the court issued an emergency order on May 8, 2018, affirming the ruling of the trial court that the consent requirement reflected in § 7-1231.14 (a) does not apply to criminal defendants whose inpatient mental-health treatment has been ordered pursuant to D.C. Code § 24-531.07 (a)(2) (2012 Repl.). In this opinion we explain the reasoning underlying that emergency order.

**I.**

The criminal traffic charges against J.P. rest on the following allegations. In February 2018, J.P., who did not have a driver's license, was driving a stolen truck more than thirty miles per hour over the speed limit. During a police chase, J.P. went through stop signs and drove the wrong way down a one-way street. J.P. eventually got out of the truck and attempted to flee on foot. When police officers caught J.P., he reached into his jacket pocket and turned toward a police officer with a loaded .38-caliber gun in his hand.

J.P. was charged in this case as an adult for alleged criminal traffic offenses, pursuant to D.C. Code § 16-2301 (3)(C) (2012 Repl.). In addition, the District commenced juvenile proceedings against J.P. for alleged weapons and stolen-property offenses arising out of the February 2018 incident. J.P. also has been the subject of other Family Division proceedings. He was adjudicated a neglected child in 2013 and committed to the care of the Child and Family Services Agency (CFSA). J.P. has also been charged with delinquency offenses on several prior occasions, but those cases were dismissed because J.P. was deemed incompetent to stand trial and unlikely to attain competence. At the time of the February 2018 incident, J.P. had been missing for more than two months after he fled from a shelter house.

Based on a stipulation between the parties, the trial court in this case found that J.P. was incompetent and unlikely to attain competence. The trial court therefore ordered that J.P. receive inpatient mental-health treatment pursuant to D.C. Code § 24-531.06 (c)(4) (2012 Repl.) (if criminal defendant has been found incompetent and unlikely to attain competence, trial court may order that defendant receive inpatient mental-health treatment for up to thirty days pending filing of petition for civil commitment). Because St. Elizabeths does not have a juvenile wing and is not licensed to provide juvenile care, the District contracted with the

Psychiatric Institute of Washington (PIW) to provide for J.P.'s inpatient mental-health treatment pending civil-commitment proceedings.

After the District filed a petition seeking civil commitment of J.P., the trial court ordered J.P.'s continued inpatient mental-health treatment at PIW pending the outcome of the civil-commitment proceeding, pursuant to § 24-531.07 (a)(2). The trial court stated that inpatient mental-health treatment was most appropriate for the safety of both the community and J.P.

J.P. filed an emergency motion for release, arguing that requiring him to undergo inpatient mental-health treatment was unlawful under § 7-1231.14 (a), because no parent or guardian had consented. The trial court denied the motion, holding that notwithstanding § 7-1231.14 (a), § 24-531.07 (a)(2) authorizes continued inpatient mental-health treatment of incompetent criminal defendants, including minors being prosecuted as adults, during the pendency of a civil-commitment proceeding.

**II.**

Generally, persons under the age of eighteen can only be charged as juveniles under the delinquency provisions of Title 16. D.C. Code §§ 16-2301 (3), (7); 16-2301.02 (2012 Repl.). In some circumstances, the District can move to transfer a minor to the Criminal Division of the Superior Court for prosecution as an adult. D.C. Code § 16-2307 (2012 Repl.) (permitting transfer where, inter alia, minor who is at least fifteen years old is alleged to have committed felony offense). Title 16 does not apply, however, to individuals who are sixteen or older and have been charged with enumerated serious criminal offenses. D.C. Code § 16-2301 (3)(A)-(B). Title 16 also does not apply to individuals who are sixteen or older and have been charged with traffic offenses. D.C. Code § 16-2301 (3)(C), (7). A sixteen-year-old charged with a traffic offense is therefore tried as an adult.

A criminal defendant cannot be prosecuted if incompetent to stand trial. D.C. Code § 24-531.02 (a) (2012 Repl.). Title 24 lays out procedures applicable in criminal cases where competency is at issue. D.C. Code §§ 24-531.01 to -.13 (2012 Repl.). Those procedures apply to adults, minors charged as adults, and minors whom the District has moved to transfer for prosecution as adults. D.C. Code § 24-531.01 (3), (8). If there is a question as to a defendant's competency, the trial court may where appropriate order the defendant committed for an inpatient examination. D.C. Code § 24-531.03 (e). The trial court also may order

an incompetent defendant to undergo inpatient treatment to restore competency. D.C. Code § 24-531.04 (c)(3). If the trial court determines that a defendant is incompetent and unlikely to attain competence, the court must "either order the release of the defendant or, where appropriate, enter an order for treatment . . . for up to 30 days pending the filing of a petition for civil commitment." D.C. Code § 24-531.06 (c)(4). If a petition for civil commitment is filed within those thirty days, "the court may either order that treatment be continued until the entry of a final order in the civil commitment case or release the defendant from treatment." D.C. Code § 24-531.07 (a)(2).

J.P. relies on D.C. Code § 7-1231.14 (a) to contest the trial court's order for inpatient mental-health treatment. That provision is one of several provisions in the Mental Health Consumers' Rights Protection Act that address issues of consent to mental-health treatment. *E.g.*, D.C. Code §§ 7-1231.07, .08, .14 (2018 Repl.). Section 7-1231.14 focuses on minors, defined as persons under eighteen who are unmarried and unemancipated. D.C. Code § 7-1231.02 (18) (2018 Repl.). Specifically, § 7-1231.14 outlines certain circumstances in which minors are permitted to consent to particular types of mental-health treatment. As to inpatient mental-health treatment of minors, however, § 7-1231.14 (a) generally requires "consent of a parent or legal guardian." (For ease of reference, we hereinafter use

the short-hand "parental consent.") Section 7-1231.14 (a) makes exception for (1) emergency hospitalization under D.C. Code § 21-521 *et seq.* (2012 Repl.); (2) civil commitment under D.C. Code § 21-545; and (3) inpatient treatment conducted in connection with juvenile and neglect proceedings, including for purposes of determining and restoring competency, under D.C. Code §§ 16-2315, -2320, and -2321. (Although § 7-1231.14 (a) refers to D.C. Code § 16-1321, the parties agree that that is a typographical error and that the intended reference is to § 16-2321.) Section 7-1231.14 (a) does not contain an exception for inpatient mental-health treatment of minors being criminally prosecuted as adults.

## III.

By its terms, § 24-531.07 (a)(2) authorizes the trial court to require J.P. to undergo inpatient mental-health treatment during the pendency of the civil-commitment proceeding. On the other hand, § 7-1231.14 (a) by its terms appears to prohibit inpatient mental-health treatment for J.P. in the absence of parental consent.[1] Our task is to determine which of these seemingly conflicting provisions

---

[1] As previously noted, § 7-1231.14 (a) is part of the Mental Health Consumers' Rights Protection Act. Many of the provisions of that Act apply only to "consumers," who are defined as "adults, children, or youth who seek or receive mental health services or mental health supports in the District of Columbia under

(continued . . .)

governs.  We review questions of statutory interpretation de novo.  *Lopez-Ramirez v. United States*, 171 A.3d 169, 172 (D.C. 2017).

**A.**

For several reasons, we agree with the trial court that § 24-531.07 (a)(2) governs in the present case.  First, § 24-531.07 (a)(2) was enacted as part of a chapter of the D.C. Code providing a general framework for criminal-competence procedures.  D.C. Code §§ 24-531.01 to -.13.  Those procedures are plainly intended to apply to minors who are being criminally prosecuted as adults.  D.C. Code § 24-531.01 (3) (defining "defendant" to include a person being criminally prosecuted).  In fact, the procedures are applicable to some minors who are charged as juveniles, if there is a pending motion to transfer them for adult prosecution.  *Id.* (defining "defendant" to include "a respondent in a transfer proceeding").

---

(. . . continued)

Chapter 5 of Title 21 [of the D.C. Code], without regard to voluntary, non-protesting, or involuntary status."  D.C. Code § 7-1231.02 (4).  Section 7-1231.14 (a) is not expressly so limited, instead referring more broadly to minors.  Because we conclude that § 7-1231.14 (a) is inapplicable on other grounds, we need not and do not express a view about whether that provision should be construed as limited to "consumers" and whether, if so, J.P. would qualify as a consumer for purposes of the provision.

Second, imposing a parental-consent requirement on top of the criminal-competency procedures makes little sense. The criminal-competency procedures were designed to strike a balance between "public safety and defendants' rights." D.C. Council, Report on Bill 15-967 at 11 (Nov. 17, 2004). Granting parents full veto power over the ability of a trial court to order inpatient mental-health treatment of criminal defendants presenting competency issues would disrupt that balance. That disruption would not be limited to the situation in which a minor defendant has been determined to be incompetent and unlikely to attain competence. Rather, on J.P.'s theory, parental consent apparently would be required before a trial court could order inpatient mental-health treatment either to study whether the minor defendant is incompetent or to attempt to restore competence. D.C. Code §§ 24-531.04, .05.

Third, imposing a parental-consent requirement in the context of minors prosecuted as adults would have surprising consequences extending beyond competency proceedings. For example, parental consent apparently would be required before a trial court could order inpatient mental-health treatment of a criminal defendant who was a minor: as a condition of pretrial release (D.C. Code § 23-1321 (c)(1)(B)(x) (2012 Repl.)); following an acquittal by reason of insanity

(D.C. Code § 24-501 (d)(1) (2012 Repl.)); as a condition of supervised release (D.C. Code § 24-403.01 (b)(6) (2012 Repl.); 18 U.S.C.A. §§ 3583(d), 3563(b)(9) (Westlaw through Pub. L. No. 115-182)); and as a condition of probation (D.C. Code § 24-304 (a) (2012 Repl.)). Granting parents veto power over the ability of a trial court to order inpatient mental-health treatment in those circumstances would be very disruptive to the criminal process.

Fourth, imposing a parental-consent requirement in the context of minors prosecuted as adults would create puzzling distinctions. For example, § 7-1231.14 (a) by its terms does not require parental consent before the trial court can order a minor charged with a juvenile offense to undergo inpatient mental-health treatment to determine or restore competency. D.C. Code § 16-2315 (b)(2), (c)(2). We recognize that in juvenile proceedings the trial court has a responsibility under the parens patriae doctrine to protect the child's best interests, *e.g.*, *Kent v. United States*, 130 U.S. App. D.C. 343, 346, 401 F.2d 408, 411 (1968), whereas no such responsibility exists in the context of criminal prosecution as an adult. Nevertheless, it is difficult to understand why the Council would choose to permit inpatient mental-health treatment without parental consent for juvenile respondents but provide a parental veto for minors who are being criminally prosecuted as adults.

Fifth, § 7-1231.14 (a)'s parental-consent requirement does not appear to have been directed at criminal proceedings. Rather, § 7-1231.14 largely focuses on delineating the circumstances in which a minor can consent to receive voluntary mental-health services and those in which a parent must give consent, so that the minor's consent alone will not suffice. D.C. Code §§ 7-1231.14 (b)(1) (minor may obtain certain voluntary outpatient mental-health services, other than administration of medication, without parental consent), -1231.14 (c)(1)-(2) (identifying circumstances in which minor's consent will suffice to permit administration of psychotropic medication and circumstances in which parental consent is required). Moreover, § 7-1231.14 (a) specifically carves out a number of important contexts in which the trial court is authorized to order minors to undergo inpatient mental-health services on an involuntary basis. *See, e.g.*, D.C. Code §§ 21-521 to -528 (procedures for emergency hospitalization); D.C. Code § 21-545 (order of civil commitment); D.C. Code § 16-2320 (order of commitment after dispositional hearing in juvenile proceeding); D.C. Code § 16-2321 (procedure for detention of juvenile in appropriate facility after factfinding but before dispositional hearing pending civil-commitment proceedings). Here too we see no logical reason why the D.C. Council would have permitted trial courts in all of these settings to order inpatient mental-health treatment without requiring

parental consent yet would require parental consent in the context of minors being prosecuted as adults.

These considerations strongly support the conclusion that § 7-1231.14 (a)'s parental-consent requirement does not apply to orders entered under the trial court's authority to handle criminal proceedings against minors.

**B.**

This case is not free from doubt, however, because J.P. raises a number of counter-arguments, some of which do provide support for his contrary position. On balance, though, we are persuaded that the trial court correctly ruled that parental consent was not required in this case.

First, J.P. points out that § 7-1231.14 (a) provides several explicit exceptions to the parental-consent requirement, but does not include an exception for § 24-531.07 (a)(2). J.P. thus argues that we should infer that the D.C. Council did not intend additional implicit exceptions. J.P. invokes the established canon of statutory construction "*expressio unius est exclusio alterius*": "when a legislature makes express mention of one thing, the exclusion of others is implied." *Odeniran*

*v. Hanley Wood, LLC*, 985 A.2d 421, 427 (D.C. 2009) (internal quotation marks omitted). That canon identifies a relevant consideration, but it is far from dispositive. *Id.* ("[T]he *expressio unius* maxim must be applied with a considerable measure of caution, [but] it is useful where the context shows that the draft[ers'] mention of one thing does really necessarily, or at least reasonably, imply the preclusion of alternatives.") (citation, ellipses, and internal quotation marks omitted); *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). The Supreme Court has specifically emphasized the canon's limits: "As we have held repeatedly, the canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (internal quotation marks omitted). The list of exceptions in § 7-1231.14 (a) does not include any proceedings in which individuals are being criminally prosecuted, although it does include delinquency proceedings in which juveniles are alleged to have committed criminal acts. For the reasons we have explained, we are convinced that the omission of criminal proceedings from the list

of explicit exceptions reflects an inadvertent failure to focus on the less typical circumstance in which minors are subject to criminal prosecution as adults.

Second, J.P. argues that § 7-1231.14 (a) and § 24-531.07 (a)(2) are not squarely incompatible, because the latter provision is permissive. In other words, § 24-531.07 (a)(2) provides that the trial court "may" order inpatient mental-health treatment during the pendency of a civil-commitment petition but does not *require* the trial court to issue such an order. In contrast, J.P. points out, § 7-1231.14 (a) is mandatory: it prohibits inpatient mental-health treatment in the absence of parental consent. Thus, a trial court can comply with both provisions by honoring the prohibition in § 7-1231.14 (a). It is true that compliance with both provisions is not "a physical impossibility." *Goudreau v. Standard Fed. Sav. & Loan Ass'n*, 511 A.2d 386, 391 (D.C. 1986) (internal quotation marks omitted). Nevertheless, the conflict between the two provisions "does not evaporate" simply because one is permissive and one is mandatory. *Id.* (internal quotation marks omitted). To the contrary, when one provision seems to permit what another provision seems to forbid, courts have often treated the provisions as conflicting. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-46 (2012) (discussing situations "in which a general permission or prohibition is contradicted by a specific prohibition or permission"). We take the same approach in the

present case. Our task is to determine the interpretation of both provisions that best harmonizes them, taking into account their language; their context; their place in the overall statutory scheme; their evident legislative purpose; and the principle that statutes should not be construed to have irrational consequences. *See, e.g.*, *Lopez-Ramirez*, 171 A.3d at 177 (in addition to statutory language, court must consider "the legislative history and the larger statutory scheme"; court has "reject[ed] a statutory interpretation that would lead to incongruous consequences and was in tension with other statutes") (internal quotation marks omitted); *Office of the People's Counsel v. Pub. Serv. Comm'n*, 163 A.3d 735, 740 (D.C. 2017) ("[A] word in a statute may or may not extend to the outer limits of its definitional possibilities. The meaning -- or ambiguity -- of certain words or phrases may only become evident when placed in context. . . . We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. Statutory interpretation is a holistic endeavor.") (internal quotation marks omitted).

Third, J.P argues that it "transcends the judicial function" to read an implicit exception into § 7-1231.14 (a). It is true that this court has sometimes said, in categorical terms, that correcting legislative errors or omissions is not a proper judicial function. *See, e.g.*, *Moore v. Gaither*, 767 A.2d 278, 285 (D.C. 2001). That is certainly the ordinary rule, but in practice the rule is not categorical.

Although the court does not reach such a conclusion lightly, the court has in certain unusual circumstances concluded that a statute could not reasonably be interpreted according to its explicit terms. *See, e.g.*, *Office of the People's Counsel*, 163 A.3d at 739-41 (accepting Public Service Commission's conclusion that unqualified language of notice provision was implicitly limited to certain proceedings); *Gilmore v. United States*, 699 A.2d 1130, 1132 (D.C. 1997) ("[A] provision which is the result of obvious mistake should not be given effect, particularly when it overrides common sense and evident statutory purpose.") (internal quotation marks omitted). For the reasons we have explained in this case, we conclude that it does not exceed the proper judicial role to reconcile the apparent conflict between § 7-1231.14 (a) and § 24-531.07 (a)(2) by holding that the former provision's parental-consent requirement does not apply to criminal defendants. To the contrary, we understand ourselves to be permissibly performing the "classic judicial task of reconciling . . . laws enacted over time, and getting them to 'make sense' in combination." *O'Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 387 (D.C. 2012) (quoting *United States v. Fausto*, 484 U.S. 439, 453 (1988)).

Fourth, J.P. argues that § 7-1231.14 (a) should control because it is more specific than § 24-531.07 (a)(2). *See, e.g.*, *Bolz v. District of Columbia*, 149 A.3d

1130, 1143 n.30 (D.C. 2016) ("To the extent that two statutes conflict, the more specific statute governs the more general one.") (internal quotation marks omitted). It can be difficult to determine which of two statutes is more general and which is more specific. *See, e.g.*, *Larsen v. Bd. of Parole & Post-Prison Supervision*, 138 P.3d 16, 21 (Or. Ct. App. 2006) ("We are mindful of the fact that it is not always easy to discern which among statutes is the 'general' and which the 'specific' . . . ."). In the present case, each of the provisions at issue is more specific than the other in some respects and more general than the other in some respects. Section 7-1231.14 (a) focuses more narrowly on minors, whereas § 24-531.07 (a)(2) applies to adults and some minors. Section 24-531.07 (a)(2) focuses more narrowly on criminal defendants, whereas § 7-1231.14 (a)(2) is not so limited. In fact, § 24-531.07 applies to a very narrow category of criminal defendants: those who have been deemed unlikely to attain competence and as to whom a petition for civil commitment has been filed. All things considered, we conclude that § 7-1231.14 (a) is not more specific than § 24-531.07 (a)(2).

Fifth, J.P. argues that imposing a parental-consent requirement in the present context will not lead to irrational consequences, because the prosecutor in a criminal case can have the defendant hospitalized on an emergency basis, under D.C. Code §§ 21-521 to -528, or civilly committed, under D.C. Code § 21-545. To

the extent those alternatives are available in a given case, they would permit the trial court to order inpatient mental-health treatment of a minor being prosecuted as an adult without obtaining parental consent. The availability of those alternatives thus does to a degree ameliorate the practical consequences of accepting J.P.'s position. It is not clear, however, whether those alternatives would typically be available and practical in all of the various circumstances in which a trial court in a criminal case could have a legitimate need to order inpatient mental-health treatment of a minor being prosecuted as an adult. See *supra* pp. 9-10. In any event, we do not view this consideration as sufficient to outweigh the other considerations that lead us to affirm the trial court's ruling.

Sixth, J.P. argues that it is not irrational to require parental consent with respect to inpatient mental-health treatment of minors being prosecuted as adults, but not to impose such a requirement as to minors charged with juvenile offenses. Specifically, J.P. argues that minors in juvenile proceedings are accorded greater statutory protections with respect to the suitability of the facilities to which they might be sent to receive inpatient mental-health treatment. *See, e.g.*, D.C. Code § 16-2315 (b)(1) (juvenile may be admitted for inpatient treatment to "suitable medical facility"). In J.P.'s view, parental consent can help to ensure that minors being prosecuted as adults are not sent to unsuitable facilities for inpatient mental-

health treatment. We do not find this contention persuasive. Various provisions address the appropriateness of facilities to which minors prosecuted as adults may be sent. *See* D.C. Code § 24-531.01 (6)(B), 10(D) (provisions specifying requirements to qualify as "[i]npatient treatment facility" and "[t]reatment provider"); D.C. Law 21-238, §§ 202-04, 63 DCR 15312, 15316-18 (Dec. 16, 2016) (to be codified at D.C. Code §§ 24-911 to -913) (establishing conditions of confinement for "juveniles," defined as "individual[s] under 18 years of age"). Moreover, § 24-531.07 (a)(2) grants the trial court discretionary authority to order inpatient mental-health treatment. In exercising that authority, the trial court should take into account whether there is a suitable facility for such treatment. The trial court in this case considered the suitability of available facilities in making its determination, requiring the District to find an appropriate facility because St. Elizabeths was not equipped with a juvenile wing.[2] In any event, the blunt

---

[2] J.P. argues that § 24-531.07 (a)(2) does not provide for suitable treatment in this case, because that provision authorizes treatment only for the purpose of restoring competence even though it is undisputed that J.P. is not likely to attain competence. We disagree. Section 24-531.07 (a)(2) provides for "continued" treatment. J.P. argues that this continued treatment must relate back to the treatment ordered under § 24-531.06 (c)(4), which contemplates treatment to restore competence under D.C. Code § 24-531.05 (a). But "continued" treatment under § 24-531.07 (a)(2) is not limited to treatment to restore competency. Section 24-531.06 (c)(4) includes more general language authorizing a trial court to order "treatment" pursuant to § 24-531.07 (a)(2). Moreover, "treatment" is defined as "the services or supports provided to persons with mental illness or intellectual disabilities, including services or supports that are offered or ordered to restore a

(continued . . .)

instrument of a parental-consent requirement, which can completely preclude inpatient mental-health treatment under § 24-531.07 (a)(2) even where suitable facilities are available, is not a reasonable substitute for an inquiry into the suitability of facilities.

Seventh, J.P. appears to suggest that we should employ the doctrine of constitutional avoidance in deciding how § 24-531.07 (a)(2) and § 7-1231.14 (a) fit together, because § 24-531.07 (a)(2) is "an extremely troubling statute that is likely unconstitutional." *See generally, e.g.*, *Mack v. United States*, 6 A.3d 1224, 1234 (D.C. 2010) ("[T]he canon of constitutional avoidance is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts.") (internal quotation marks omitted). It is undisputed that J.P. did not adequately raise a direct challenge to the constitutionality of § 24-531.07 (a)(2) in the trial court, and the issue was not raised in this court until the

---

(. . . continued)
person to competence, to assist a person in becoming competent, or to ensure that a person will be competent." D.C. Code § 24-531.01 (9) (2017 Cum. Supp.). Appropriate treatment under § 24-531.07 (a)(2) thus can include, but is not limited to, treatment to restore competency. J.P. therefore is entitled to appropriate mental-health treatment during the pendency of the civil-commitment proceeding in this case. *Cf.* D.C. Code § 21-562 (2012 Repl.) ("person detained as an emergency involuntary patient by or committed to the care of the Department, a provider, or a hospital for mental illness" is "entitled to medical and psychiatric care and treatment").

reply brief. We therefore express no view on the constitutional issue. *See, e.g.*, *Winston v. United States*, 106 A.3d 1087, 1092 n.12 (D.C. 2015) ("This court ordinarily declines to consider constitutional contentions which are being presented for the first time on appeal unless the alleged constitutional shortcoming in the proceedings was so plain that the judge should have ruled on it notwithstanding the litigant's failure to raise it.") (internal quotation marks omitted); *Aeon Fin., LLC v. District of Columbia*, 84 A.3d 522, 530 (D.C. 2014) ("It is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief.") (brackets and internal quotation marks omitted). With respect to J.P.'s reliance on the doctrine of constitutional avoidance, we conclude that the doctrine does not apply in this case. J.P.'s challenge to the constitutional validity of § 24-531.07 (a)(2) does not turn on J.P.'s status as a minor. Rather, J.P. argues that legislature acted impermissibly by generally authorizing potentially lengthy inpatient mental-health treatment of criminal defendants who have been found unlikely to attain competence. Because § 24-531.07 (a)(2) applies to adults, the constitutional concern J.P. raises would persist even if we were to agree with J.P. that § 24-531.07 (a)(2) cannot be applied to minors absent parental consent. Under the circumstances, we do not view the doctrine of constitutional avoidance as supporting J.P.'s argument. *See Ileto v. Glock, Inc.*, 565 F.3d 1126, 1143 n.12 (9th Cir. 2009) (point of constitutional-avoidance doctrine is to adopt interpretation that

"avoids any constitutional problem," not to leave alternative that "still raises the identical issue in a slightly different form").

Finally, J.P. argues that we should apply the rule of lenity. The rule of lenity, however, "is a secondary canon of construction, and is to be invoked only where the statutory language, structure, purpose, and history leave the intent of the legislature in genuine doubt." *See Whitfield v. United States*, 99 A.3d 650, 656 (D.C. 2014) (brackets and internal quotation marks omitted). For the reasons we have explained, the rule of lenity does not tip the balance in this case.[3]

In sum, we conclude that § 7-1231.14 (a) does not prevent a court from ordering, pursuant to § 24-531.07 (a)(2), the continued inpatient mental-health treatment of a criminal defendant who has been declared incompetent and unlikely to attain competence. As we did in our emergency order, we note that we express no view with respect to other possible challenges to the trial court's order.

---

[3] J.P. and the District extensively debate the applicability and force of two additional statutory-interpretation doctrines: the District argues that § 24-531.07 (a)(2) should control because it was enacted after § 7-1231.14 (a), whereas J.P. argues that § 7-1231.14 (a) should control because there is a presumption against interpreting a later statute to impliedly repeal an earlier statute. In our view, that debate is at best for J.P. a draw. Because we find the considerations in text sufficient to resolve the question before us, we see no need to wade into the details of that debate.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*