*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CM-994

DEANGELO FOSTER, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-8360-17)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued March 28, 2019                    Decided November 7, 2019)

*Nicholas Q. Elton* for appellant.

*Ethan Carroll*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman* and *Kamilah O. House*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

BECKWITH, *Associate Judge*: After a bench trial, appellant Deangelo Foster was found guilty of one count of unlawful entry stemming from his presence on the grounds of a District of Columbia Housing Authority (DCHA) property he had been barred from two days earlier. On appeal, he argues that he could not be found guilty

of unlawful entry because the government failed to establish that he was on the property without authority. Specifically, Mr. Foster contends that he lived in—and thus was authorized to be at—the DCHA apartment complex from which he was barred, and he contests the trial court's conclusion that he could be barred from a part of the complex that security officers viewed as separate from the part where he resided. We agree with Mr. Foster and reverse his conviction.

## I.

According to the evidence at trial, Hopkins Apartments was a DCHA housing development that encompassed six buildings in the area roughly bounded by 10th and 15th Streets and I and M Streets in Southeast D.C. Charles Roberts, a special police officer who provided security at DCHA housing developments, was working on patrol at Hopkins Apartments when he encountered Deangelo Foster near an apartment building at 1000 12th Street SE. After a brief interaction, Officer Roberts issued Mr. Foster a barring notice pursuant to the regulation governing the public housing barring policy. *See* 14 DCMR § 9600 (2005). The barring notice stated that Mr. Foster was not permitted to be on the property described as "Hopkins I," which included 1000 12th Street—where the encounter occurred—as well as two other buildings at 1121 and 1131 K Street SE. At the time, Mr. Foster lived at 1025 13th

Street SE in another part of Hopkins Apartments.[1]

Another special police officer, Anthony Glasgow, testified that he was working at a different DCHA development two days later when he received a call that Mr. Foster was on the grounds of the apartment building at 1131 K Street SE. Officer Glasgow and other officers responded to the area, saw Mr. Foster standing with a group of other people "inside the gates of 1131 K Street," and arrested him for unlawfully entering the property in violation of the previous barring notice.

In his own testimony, Mr. Foster stated that at the time the police arrested him, he was on his way to deliver a Mother's Day gift at the apartment he shared with his mother, Monica Wheeler. Ms. Wheeler herself testified that there were multiple buildings in the Hopkins complex, and that to get to her apartment building, "[y]ou can cut through the buildings, or you can come the long way, which is way down from Pennsylvania Avenue[.]" She also identified the lease for her apartment at 1025 13th Street SE and noted that it listed "Deangelo Foster" as a member of her household. The lease was admitted into evidence.

---

[1] The barring notice incorrectly listed Mr. Foster's address as being on Clay Street NE. Mr. Foster was not carrying any identification when he was stopped by Officer Roberts and the officers relied on their own records to obtain what turned out to be Mr. Foster's former address.

The trial court found Mr. Foster guilty of unlawful entry after determining that the government had proven that he was lawfully barred from 1131 K Street when he was found on that property two days after receiving the barring notice. In reaching that conclusion, the court credited the testimony of Officers Roberts and Glasgow and Ms. Wheeler, including Ms. Wheeler's testimony about the lease.

**II.**

On appeal, Mr. Foster argues that the record contains insufficient evidence to show that Hopkins Apartments consisted of more than one legally distinct DCHA property, especially when considering the lease that was admitted into evidence during his mother's testimony. Because a resident of Hopkins Apartments had authority to be on the entire property, Mr. Foster contends, the barring notice was invalid under the regulation governing the public housing barring policy and he therefore could not have committed the crime of unlawful entry.

The government does not dispute that the apartment building at 1025 13th Street SE was part of Hopkins Apartments or that Mr. Foster resided at that address at the time he was barred and subsequently arrested. It argues instead that the trial court did not err in concluding that Hopkins Apartments consisted of two separate

properties in Southeast—"Hopkins One" and "Hopkins Two"[2]—and that Mr. Foster's residence in "Hopkins Two" did not preclude him from being legally barred from all of the "Hopkins One" addresses.

We review challenges to the sufficiency of the evidence de novo, considering all the evidence in the light most favorable to the verdict and according deference to the factfinder to weigh the evidence, determine credibility, and draw justifiable inferences of fact. *See Cherry v. District of Columbia*, 164 A.3d 922, 929 (D.C. 2017) ("The evidence is sufficient if any rational fact-finder could have found the elements of the crime beyond a reasonable doubt.") (internal quotation marks omitted); *Duffee v. District of Columbia*, 93 A.3d 1273, 1274 (D.C. 2014) ("This court reviews de novo the elements of a crime which the prosecution must prove to support a conviction.") (internal quotation marks omitted). Where the sufficiency determination involves the interpretation of a statute or, as here, a regulation, we also review that question de novo. *See In re D.F.*, 70 A.3d 240, 243 n.5 (D.C. 2013).

"In order to establish the elements of unlawful entry under § 22-3302, the government must demonstrate '(1) entry that is (2) unauthorized—because it is

---

[2] Specifically, the buildings at 1025 13th Street, 1011 L Street, and 1430 L Street were "Hopkins Two" buildings and, as noted above, "Hopkins One" encompassed the buildings at 1000 12th Street, 1121 K Street, and 1131 K Street.

without lawful authority and against the will of the owner or lawful occupant.'" *Cartledge v. United States*, 100 A.3d 147, 148–49 (D.C. 2014) (quoting *Ortberg v. United States,* 81 A.3d 303, 307 (D.C. 2013)). As Hopkins Apartments is a public housing property, "the government had to prove that appellant was [on the property] in derogation of the law that establishes who has (and who lacks) lawful authority to be on DCHA property." *Winston v. United States*, 106 A.3d 1087, 1090 (D.C. 2015). In addition, because the government premised Mr. Foster's unlawful entry charge on an alleged violation of a DCHA barring order, "it must prove that the barring order was issued for a reason described in DCHA regulations . . . ." *Id.*

The relevant regulation, entitled "Public Housing: Barring Policy," is 14 DCMR § 9600. Under this regulation, "DCHA has the right to refuse entrance or access to any of its properties to any unauthorized person as defined in § 9600.2." 14 DCMR § 9600.1. "Unauthorized" persons are any who do not fit in the delineated categories of "authorized" persons, which include "residents of the property" and "members of the resident's household." § 9600.2. "Any person *not* identified in § 9600.2 as an authorized person may be subject to the issuance of a Bar Notice . . . ." § 9600.4 (emphasis added). In this case, both parties agree that Mr. Foster would be considered "authorized" to be on the property with respect to his

own address at 1025 13th Street SE or any of the other "Hopkins Two" addresses.[3] The question for the trial judge, however, was whether Mr. Foster was not authorized to be on the "Hopkins One" grounds (and thus subject to barring under 14 DCMR § 9600) despite being a resident of Hopkins Apartments.

The government emphasizes the testimony of Officer Roberts, who issued the barring notice, in support of its position that "Hopkins One" buildings and grounds are legally distinct from those of "Hopkins Two."  Officer Roberts testified that he was employed by a security service and that his job gave him the authority to "enforce the rules and regulations of private property" and to issue barring notices to a person "if she or he is in violation of private property rules and regulations, or D.C. Housing Authority rules and regulations."  In describing the complex at issue here, Officer Roberts stated that "Hopkins Apartments property is a large property" and that "[i]t branches off [into] two parts."  "Hopkins One is considered as" the 12th Street and K Street addresses, he said, while "Hopkins Two is considered at [sic]" the 13th Street and L Street addresses.  Officer Roberts testified that in order to determine whether someone is authorized to be on the property, he consulted a tenant roster that listed residents according to the specific building in which they

---

[3] The parties similarly agree that it makes no difference if Mr. Foster was categorized as a "resident" or "member of a resident's household," as both are categories of authorized persons under § 9600.2.

lived, rather than a "Hopkins One" or "Hopkins Two" designation. And Officer Glasgow, the officer who arrested Mr. Foster, identified an aerial photograph of the complex both as "Hopkins One and Two property" and as "Hopkins Apartments."

In addition to this testimony, however, the record also contained a document from DCHA itself: a copy of the lease for the apartment Mr. Foster and his mother lived in. The lease lists the property name as "Hopkins Apartments" and provides a description of the leased premises, stating in relevant part:

> The Leased Premises includes the Lessee's Unit as indicated above and other buildings or areas for the exclusive use of the Lessee (the "Lease[d] Premises"). The Leased Premises are located in a federally assisted public housing development owed by the authority (the "Development"). "Development" includes the common areas of the buildings and grounds associated with all the buildings in the Development.

Later in the lease, a section labeled "Use of Common Areas" provides: "The Leased Premises, together with all common areas, grounds, and facilities, including elevators, and any other property owned by the Authority shall be used only in a reasonable manner."[4] This section of the lease further states: "Entry to any part of

---

[4] At trial, Mr. Foster also introduced an aerial photograph of the property showing at least four buildings and the surrounding grounds. The photo, and Officer Glasgow's testimony about it, indicate that the "common areas" include at least one playground, located between the 1000 building and Mr. Foster's residence, and one

the Development, other than the common areas or the areas included in the Leased Premises, or other Authority property restricted areas . . . is strictly prohibited."

Taken together, these provisions of the lease—and thus DCHA, which was a party to the lease—gave the lessee and any listed household member the right to access not only the individual unit listed under "Address," but also all of the common areas, grounds, and facilities associated with all of the buildings in the development. Ms. Wheeler's lease listed Mr. Foster as a household member, and Mr. Foster therefore had the express authority to enter and use any common area within "Hopkins Apartments."

The right of access established by the lease bears on the key question whether Mr. Foster lacked lawful authority to be on the 1131 K Street property. *See Winston*, 106 A.3d at 1090. Because Mr. Foster was entitled to be on the grounds and in the common areas of all buildings in "Hopkins Apartments," he was an "authorized" person for the purposes of DCHA regulations. The barring notice purporting to exclude him from the "Hopkins One" property was thus invalid. As a barring notice is "a valid basis for an unlawful entry conviction only insofar as it was authorized

basketball court, located near the 1131 building Mr. Foster was standing by when he was arrested.

by DCHA regulations," *id*. at 1092 n.11, the evidence was insufficient to establish that Mr. Foster's entry was unlawful.[5]

Accordingly, we reverse Mr. Foster's conviction for unlawful entry and remand to allow the trial court to enter a judgment of acquittal on that charge.[6]

*So ordered.*

---

[5] The government did not respond in its brief to Mr. Foster's argument about the lease, but instead contended that the evidence was sufficient based on the testimony of Officer Roberts, the text of the barring notice, and the fact that Officer Roberts only barred Mr. Hopkins from "Hopkins One." At oral argument, in response to questioning about the lease, the government continued to forgo reliance upon an alternative textual interpretation of the lease, and focused instead upon the special police officers' testimony and the tenant roster as establishing the validity of the barring notice. *See generally Capital City Mortg. Corp. v. Habana Vill. Art & Folklore, Inc.*, 747 A.2d 564, 567 (D.C. 2000) ("Leases of real property are to be construed as contracts. In this jurisdiction, we adhere to the objective law of contracts, whereby the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, unless the written language is not susceptible of a clear and definite undertaking[.]" (cleaned up)).

[6] Our opinion today is limited to a barring notice issued pursuant to 14 DCMR § 9600 and does not address other legal measures, such as CPO orders, that may result in a person being blocked from his residence or portions thereof. *See, e.g.*, D.C. Code § 16-1005(c)(4) (authorizing judicial officer to issue a protection order that directs the respondent to refrain from entering the dwelling unit of the petitioner where dwelling is jointly owned, leased, or rented and occupied by both parties).